356 So.2d 477 (1977)
Lillian M. ROBINSON et al.
v.
ADMINISTRATOR, DEPARTMENT OF EMPLOYMENT SECURITY, State of Louisiana and Louisiana Association of School Superintendents and Louisiana School Board Association.
No. 11619.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
*478 William R. D'Armond, Baton Rouge, of counsel for plaintiffs-appellants, Lillian M. Robinson, et al.
Marion Weimer, Baton Rouge, of counsel for defendants-appellees, Administrator, Dept. of Employment Sec., State of La. and Louisiana Association of School Superintendents and Louisiana School Bd. Ass'n.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
Plaintiffs, a group of 130 teachers employed in Louisiana,[1] appeal a judgment of the district court which affirmed the decisions of the Board of Review for the Department of Employment Security of the State of Louisiana (Board of Review), denying their claims for unemployment compensation benefits under the Emergency Jobs and Unemployment Assistance Act of 1974. *479 Pub.L. 93-567, Title II, §§ 201-210, 88 Stat. 1850-1853, as amended by Pub.L. 94-45, Title II, §§ 201-203, June 30, 1975, 89 Stat. 240-242.
LSA-R.S. 23:1634 provides for judicial review of final decisions of the Board of Review. The defendant, Administrator, Department of Employment Security, State of Louisiana, is designated by R.S. 23:1634 as a party to actions for judicial review. The defendants have neither answered nor filed an appeal.
The parties made the following stipulations of facts and issues:

* * * * * *
"4. All plaintiffs were not working during the summer of 1975, between the school term ending May, 1975 and the next school term commencing September, 1975;
"5. Each of the plaintiffs filed claims for unemployment compensation benefits with the Department of Employment Security with respect to their weeks of unemployment during the summer of 1975. The Appeals Referee of the Department of Employment Security ruled that the plaintiffs were ineligible for benefits. All of the decisions of the Appeals Referee are identical in form; . . .
"6. Subsequent to the decision of the Appeals Referee, plaintiffs filed an appeal to the Board of Review, the highest administrative tribunal within the Department of Employment Security. The Board of Review affirmed the decisions of the Appeals Referee. All of the decisions are identical in form; . . .
"7. The plaintiffs' claims were filed to seek benefits under the Emergency Jobs and Unemployment Assistance Act of 1974 (Pub.L. 93-567, Title II, Sections 201-210) effective December 31, 1974 (herein called `the Act'). The Act established `a temporary federal program of special unemployment assistance for workers who are unemployed during a period of aggravated unemployment and who are not otherwise eligible for unemployment allowances under any other law.' Section 201; . . .
"8. The payment of benefits to claimants under the Act is administered by the various state unemployment compensation agencies in accordance with state statutory procedures. In Louisiana, the Department of Employment Security is the agency administering payment of benefits under the Act;
"9. As originally enacted, the Act contained no express provision dealing with the eligibility for benefits of school employees who were unemployed between school years, and employees in such position were ruled eligible for such benefits;
"10. By means of the Second Supplemental Appropriations Act, 1975, Pub.L. 94-32, Title 1, Section 101, effective June 12, 1975 . . ., the Act was amended by adding what is now Section 203(b) of the Act, which provides:
"`(b) An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period) if
"`(1) such individual performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and
"`(2) such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms.'"

* * * * * *
"13. . . . Plaintiffs also filled out questionnaires, . . ., indicating the facts applicable to each plaintiff, and these questionnaires were received in evidence at the administrative hearing; . . .

*480 "14. It is the position of plaintiffs that the statute prohibits payment of benefits only to those teachers who have contracts to teach in the next school year, and that any teacher without a contract is eligible for benefits. It is the position of the Department of Employment Security that no written contract is required, and that a teacher is ineligible for benefits if he `has, by written, verbal, implied or through usual hiring practices, contracted to return to any school system for the 1975-76 school year; . . .' . . .
"15. The plaintiffs are categorized, based on their signing of a written contract, as follows:
(a) 54 plaintiffs never signed a contract.. . .
(b) 71 plaintiffs signed contracts. . . . Some signed prior to the summer; some signed during the summer; some did not sign until the new school year began. . . ."
The decision of the Appeals Referee held that the intent of Section 203(b) is that no individual who has, by written, verbal, implied, or through usual hiring practice, contracted to return to any school system for the 1975-76 school year, shall be eligible to receive supplemental unemployment assistance benefits and that because the teachers were employed in such capacity under Louisiana Law, R.S. 17:413, they were not eligible for further benefits beginning June 15, 1975.
Plaintiffs contend that the Board of Review, and hence the trial court in affirming the Board's decision, erred in construing the Act to prohibit payment of benefits to plaintiffs. They assert that those teachers who had no written contract to teach in the school year beginning in Fall, 1975, but who enjoyed only tenure rights under R.S. 17:413 and R.S. 17:441-444 were without any legally enforceable rights to insure their jobs for the coming Fall. Therefore, it is argued, they have no contract of employment either written, verbal, implied or otherwise and hence, they are entitled to unemployment compensation under the amendment to the Supplemental Unemployment Assistance Act of 1975.
In the case of Glenn Swetman, et al. v. Joseph Gerace, Administrator of the Department of Employment Security, et al., 349 So.2d 977, this court recently considered the availability of unemployment compensation benefits to tenured teachers (professors at Nicholls State University) for the summer of 1976 who had no written contract of employment for the 1976-77 academic year. They filed claims under Louisiana's unemployment compensation statute, Section 6 of LSA-R.S. 23:1600, which also denies benefits to those working in institutions of higher education if the individual has a contract of employment with the institution for the coming academic years. In that case, the trial court reversed the decisions of the Appeals Referee and the Board of Review. It granted the recovery of unemployment compensation benefits on the ground that in the absence of legislative funding for teachers' salaries (i. e. a certain and definite price for the lease of the labor), the tenure system could not serve as a valid contract. This court reversed stating:
"We disagree. Contracts can be express or implied, LSA-C.C. Art. 1780. Silence or inaction may in some instances show an assent that creates an obligation, LSA C.C. Art. 1817. It seems quite clear to us that there was a contract between plaintiffs and Nicholls. Plaintiffs fully expected to teach during the fall semester. Nicholls fully expected them to. Plaintiffs had tenure as teachers; had the university failed to employ them without legal cause, the university would have been liable. We therefore believe there was a contract.
". . . and it is immaterial that it was subject to the conditions, either suspensive or resolutory, of availability of finances and approval of the proper officials. The fact that either party may not have had to perform an obligation under the contract because of the failure of the condition does not result in the conclusion that there was never a contract. The contract had existence and validity at the time; . . .

*481 "The statute we are construing does not require an unconditional contract; the court is not justified in adding that requirement.

* * * * * *
"In the absence of unequivocal words requiring that result, we doubt that there was legislative intent to afford unemployment benefits to teachers after their normal work year when both employer and employee expect the resumption of the employment relationship and when legal liability would result from a refusal to perform, once the conditions, if any, have been satisfied."
We adhere to the rationale of the Swetman decision in its construction of the tenure system as being the equivalent of legally binding and enforceable contract rights. Furthermore, we see no distinction between ineligibility for benefits on the basis of an employment contract under R.S. 23:1600(6) of the Louisiana unemployment provisions and ineligibility on the basis of an employment contract under Section 203(b) of the Supplemental Unemployment Assistance Act. Consequently, we hold that the plaintiff teachers who are tenured had contracts of employment for the next academic year, and for that reason are ineligible for compensation benefits from the time of the effective date of the amendment to the Act (June 15, 1975) to Fall, 1975.
For the same reasons, we hold that those teachers who were non-tenured but who had an expectation of continued employment, likewise had a contract of employment and are likewise ineligible to receive unemployment compensation benefits for the abovementioned time period. In the recent case of Holmes v. State Department of Employment Security, 353 So.2d 737, also decided by this court, the rationale of Swetman was extended to include non-tenured teachers. There we stated:
". . . Both the non-tenured teachers and the school expected resumption of the employment relationship; and, legal liability would result from a refusal to perform once the conditions, if any, were satisfied. We find the rationale of the Swetman case equally applicable to non-tenured as to tenured teachers; and, consequently, we find that the non-tenured teachers in the instant case are also ineligible for the unemployment benefits sought herein."
Plaintiffs contend that the Act is violative of the due process clause insofar as it purports to disallow benefits to school teachers and at the same time allow benefits to other school employees similarly situated, such as bus drivers, clerical employees, lunchroom employees and janitorial employees, who, like school teachers, do not work for the school system during the summer months. They assert that such other employees are all hired for a nine month period and as a practical matter all have the same expectation of employment during the following year as have teachers, but that the Act singles out school teachers and administrators for the denial of benefits for which discrimination there is no reasonable basis.
Statutes which are applicable to all persons under like circumstances and which do not subject any individual to an arbitrary exercise of power, do not violate the due process or equal protection clauses of the state and federal constitutions. It is clear that plaintiffs herein are treated in the same manner as other teachers identically situated.
Differences and distinctions in the treatment of classifications offend the constitutional guarantees only when the variations are arbitrary and without rational basis. Standard Homestead Ass'n v. Horvath, 205 La. 520, 17 So.2d 811 (1944); State v. Pebworth, 260 La. 647, 257 So.2d 136 (1972); Koppenol v. St. Tammany Parish Hospital, 341 So.2d 1242 (La.App. 1st Cir. 1976), writ refused. However, differences in character, condition or situation can justify a distinction among classifications, without violating the due process guarantees as long as those belonging to the same class are treated alike. Cunningham v. United States, 5th Cir., 256 F.2d 467 (1968); State v. Pebworth, supra.
*482 In the instant case, we agree that many of the same characteristics which are incident to employment as a school teacher are also incident to other non-teaching school-related employment. The two categories of employment are alike in many respects: their working days and holidays are generally the same; bus drivers, like school teachers have tenure, R.S. 17:491-493; they have the same employers and those to whom they must report are the same; and, bus drivers, clerical employees, lunchroom employees and janitorial employees in practice have an expectation of re-employment for the next school year equal to that of teachers. These likenesses, however, are a necessary consequence of the normal routine functioning of an orderly school system. Beyond that, they cease.
Teachers must have a "teacher certificate" and are employed as educators to perform the primary function of any learning institution. They have been classified, alone and separate from other school employees, for the purpose of establishment of a minimum salary schedule, which is based on their education and years of experience. La.R.S. 17:421. Other school employees do not share in this benefit. The school bus drivers are alone in a classification to set up their minimum salary schedule which is quite different from that of the teachers. La.R.S. 17:497.
Because of the different functions and characteristics between teachers and other employees of the school system, we hold that Congress had a rational basis for classifying teachers, researchers, and administrators in one group, separate and apart from the other employees of the school system. The Congressional Act is therefore constitutional.
The judgment of the trial court is affirmed at plaintiffs' cost.
AFFIRMED.
NOTES
[1] The plaintiffs' names are listed in Exhibit 1 attached to the petition for judicial review.